IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Rodney Terrance Murray, | ) | Case No. 8:12-cv-01940-DCN-JDA |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| State of South Carolina; Warden of | ) | |
| McCormick Correctional Institution,[1] | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

This matter is before the Court on Respondent's motion for summary judgment. [Doc. 22.] Petitioner, proceeding pro se, is a state prisoner who seeks relief under 28 U.S.C. § 2254. Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review post-trial petitions for relief and submit findings and recommendations to the District Court.

Petitioner filed this Petition for writ of habeas corpus on July 6, 2012.[2] [Doc. 1.] On October 15, 2012, Respondent filed a motion for summary judgment and a return and memorandum. [Docs. 22, 23.] On October 16, 2012, the Court filed an Order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Petitioner of the summary judgment procedure and of the possible consequences if he failed to adequately respond

---

[1]Because a prisoner's custodian is the proper respondent in a habeas corpus action, *Rumsfeld v. Padilla*, 542 U.S. 426, 434–35 (2004), Respondent State of South Carolina was terminated as a party on July 18, 2012, as directed by the Court's Order directing Petitioner to bring the case into proper form. [Doc. 8.] Accordingly, throughout this Report and Recommendation the Court refers to Respondent Warden of McCormick Correctional Institution as "Respondent."

[2]A prisoner's pleading is considered filed at the moment it is delivered to prison authorities for forwarding to the court. *See Houston v. Lack*, 487 U.S. 266, 270 (1988). In this case, construing the filing date in the light most favorable to Petitioner, this action was filed on July 6, 2012. [Doc. 1-1 (envelope marked as received by prison mailroom on July 6, 2012).]

to the motion. [Doc. 24.] On November 15, 2012, Petitioner filed a response in opposition to Respondent's motion. [Doc. 29.] Having carefully considered the parties' submissions and the record in this case, the Court recommends that Respondent's motion for summary judgment be granted and the Petition be denied.

## BACKGROUND

Petitioner is presently confined at the McCormick Correctional Institution of the South Carolina Department of Corrections pursuant to orders of commitment of the Spartanburg County Clerk of Court. [Doc. 1 at 1.] In August 2004, Petitioner was indicted for criminal sexual conduct in the first degree and kidnapping. [App. 356–57, 359–60.[3]] On October 10, 2005, represented by Andrew Johnston ("Johnston"), Petitioner proceeded to trial. [App. 1–355.] On October 12, 2005, the jury returned its verdict, finding Petitioner guilty as indicted. [App. 348.] Petitioner was sentenced to thirty years imprisonment for each conviction, to run concurrently. [App. 353–54.]

**Direct Appeal**

Petitioner timely filed a notice of appeal. On March 20, 2007, Eleanor Duffy Cleary of the South Carolina Commission on Indigent Defense filed an *Anders* brief[4] on Petitioner's behalf, as well as a petition to be relieved as counsel. [Doc. 23-5.] The brief raised the following claim:

> Whether the trial judge erred in refusing to excuse a juror for cause who was the second cousin of the state's main witness against appellant?

---

[3]The Appendix can be found at Docket Entry Numbers 23-1 through 23-4.

[4]A brief filed pursuant to *Anders v. California*, 386 U.S. 738 (1967), effectively concedes the appeal lacks a meritorious claim.

2

[*Id.* at 4.]  Petitioner was informed of his right to file a pro se brief [Doc. 23-6], and he subsequently filed a pro se brief raising the following issues, quoted substantially verbatim:

> Did trial judge abuse his discretion when he allowed juror #90 Mr. [name redacted] to remain in jury.  Mr. [name redacted] stated that he was second cousin of appellant's codefendant.
>
> Did lower court err in not providing information that expert witness had in her possession during and before the trial.  This not only being evidence of error, but also the possibility of impeaching this witness was neglected.
>
> Did lower court err in allowing government to speak non-truths in opening statements.  Which could have biased the jury at the very beginning of trial and caused this to be highly prejudicial to defendant's case.
>
> Did lower court err in letting a possible perjured conversation by government official.

[Doc. 23-7 at 4].  On September 11, 2008, the South Carolina Court of Appeals issued a per curiam opinion dismissing Petitioner's appeal and granting his appellate counsel's motion to be relieved.  [Doc. 23-8.]  Remittitur was issued on September 29, 2008.  [Doc. 23-9.]

**PCR Proceedings**

### *First PCR Application*

Petitioner, proceeding pro se, filed an application for post-conviction relief ("PCR") on April 3, 2009.  [App. 362–75.]  Petitioner raised the following grounds for relief, quoted substantially verbatim:

> (a) That applicant was denied Due Process and Equal Protection of Law under the Fifth and Fourteenth Amendment of the United States Constitution and Article One Section Three of the South Carolina Constitution.  Through and by way of the trial Judge erred in failing to charge the Jury on assault

3

and battery of a high and aggravated nature.  Also that Applicant received ineffective assistance of counsel because his trial attorney failed to request the judge to instruct the Jury on the lesser included offense of assault and batter of a high and aggravated nature.

(b) That Applicant was denied Due Process and Equal Protection of Law under the Fifth, Sixth, and Fourteenth Amendment of the United States Constitution as well as Article One Section Three of the South Carolina Constitution.  By way of ineffective assistance of counsel because my trial attorney failed to  protect my non-waivable right and allowed the trial Judge to deprive me of being present at a "critical stage" in the trial.

(c) That Applicant was denied Due Process and Equal Protection of Law through and by way of ineffective assistance of counsel under the Fifth, Sixth and Fourteenth Amendment of the United States Constitution.  Because the trial attorney neglected to object or protest the Judge abuse of d[i]scretion to deny the Doyle v. Ohio violation Motion For A Mistrial.

(d) That Applicant was denied Due Process and Equal Protection of Law under the Fifth, Sixth and Fourteenth Amendment of the United States Constitution and Article One Section Three of the South Carolina Constitution.  Through and by way of ineffective assistance of counsel because the trial attorney allow the State to commit prosecutorial misconduct by intentionally committing Brady v. Maryland and Missouri v. Seibert violations.

(e) That Applicant was denied Due Process and Equal Protection of Law under the Fifth and Fourteenth Amendment of the United States Constitution as well as Article One Section Three of the South Carolina Constitution.

(f) That Applicant was denied Due Process and Equal Protection of Law under the Fifth and Fourteenth Amendment of the United States Constitution and Article One Section Three of the South Carolina Constitution because the trial attorney neglected to request a Motion for Direct Verdict for the kidnappin[g] offense during trial.  Or a Motion To Set Aside The Verdict and Sentence for lack of sufficient evidence.

4

(G) That Applicant was denied Due Process and Equal Protection of Law by way of ineffective assistance of counsel under the Fifth and Fourteenth Amendment of the United States Constitution and Article One Section Three South Carolina Constitution. Because the trial attorney neglected to object or protest prosecutorial abuse against Applicant.

(H) That Applicant was denied Due Process and Equal Protection of Law under the Fifth and Fourteenth Amendment of the United States Constitution and Article One Section Three of the South Carolina Constitution. Through and by way of ineffective assistance of counsel to be allow to be convicted and sentenced in violation of State v. Hensley, 462 S.E.2d 550 (1995).

(i) That Applicant was denied Due Process and Equal Protection of Law under the Fifth and Fourteenth Amendment of the United States Constitution. By way of ineffective assistance of counsel.

[App. 365–67.] In support of his grounds for relief, Petitioner provided the following facts,

quoted substantially verbatim:

(a) Behind the trial attorney neglected to request the Judge to instruct the Jury on assault and battery of a high and aggravated nature. Assault and battery of a high and aggravated nature is a lesser included offense of criminal sexual conduct in the first degree. And despite no request was made but, the evidence warranted, the trial Judge was obligated to instruct the lesser included offense of assault and batter of a high and aggravated nature.

(b) Behind the trial attorney failed to protect Applicant's Due Process and Equal Protection of Law guarantees by objecting, in apt time, to the trial Judge's abuse of d[i]scretion to exclude him from a critical stage in his criminal trial without his consent.

(c) Behind Applicant's trial attorney neglected to research, prepare and submit before the Court crucial evidence to substantiate the Doyle v. Ohio violation that warranted a mistrial. Fur[t]her, the trial attorney was deficient under Appellate Court Rules 407 Professional Conduct Section [2] and [4]; Section Rule 1.1 Competence; and Rule 1.4 Communication for failing to provide Applicant with an

5

ad[e]quate informed understanding of the <u>Doyle v. Ohio</u> violation, his legal rights and obligations and explain their practical implications so that he could have made a "intelligent and voluntary" decision to pursue a mistrial instead of agreeing to the attorney's request to withdraw the Motion For A Mistrial.

(d) Behind the trial attorney neglected to request a Motion For A Mistrial following a development during the trial of the State's deliberate suppression of oral conversation in violation of <u>Brady v. Maryland</u> that were yet and still used by the prosecution against the Applicant; or in the alternative, the attorney should have requested a Motion For A Mistrial because the State denied Applicant the right to a <u>Jackson v. Denno</u> hearing to suppress the oral conversations due to being obtained in violation of <u>Missouri v. Seibert</u>. Or at the very least, request the Judge to instruct the Jury that it could not consider in its deliberations the prejudicial statements, comments, etc. testified as to the oral conversations with the Applicant or any prejudicial statement, comments, etc. made by the prosecutor regarding the oral conversations.

(e) Behind the trial attorney neglected to cross examine a State's witness and solicit exculpatory testimony on the Applicant's behalf. Consequentially, there exist exculpatory material testimony which has not been previously presented or heard by the Court which qualifies under Statute Section 17-27-20 South Carolina Code of Law (1976) as newly discovered evidence, and warrant a new trial.

(f) Behind the trial attorney failed to request a Motion For A Direct Verdict during the trial or request a Motion To Vacate The Conviction And Sentence For Kidnapping where neither the alleged victim or co-defendant testified that a kidnapping every occurred.

(G) Behind the trial attorney neglected to object to the prosecutor's deliberate fabrication and or prejudicial comments and remarks during his closing arguments.

(h) Behind the trial attorney failed to request a Motion For A Mistrial rather than object to the trial Judge committing revers[i]ble error by allowing Peggy Webb Hamrick to testify Elizabeth Louise Bridgeman's post-traumatic stress disorder was caused by a criminal sexual assault by applicant.

6

> (i) Behind the trial attorney neglected to reserve a peremp[]tory challenge and strike for the known relative (cousin) of the co-defendant, Curtis Junior Woodruff, who later was selected as an Juror despite a Motion to Challenge For Cause being denied.

[App. 368–70.]

A hearing was held on the PCR application on November 2, 2009, and Petitioner was represented at the hearing by Shawn M. Campbell. [App. 381–438.] Testimony was received from Petitioner and Johnston. [*Id.*] On December 31, 2009, the PCR court filed an order denying and dismissing the application with prejudice. [App. 439–53.]

A notice of appeal was timely filed and served. On January 27, 2011, Kathrine H. Hudgins ("Hudgins") of the South Carolina Commission on Indigent Defense filed a petition for writ of certiorari on Petitioner's behalf in the South Carolina Supreme Court, seeking review of the PCR court's decision and raising the following issue:

> Did the PCR judge err in refusing to find counsel ineffective for failing to object to expert witness testimony that was outside the time and place limitations of Rule 801(d)(1) and constituted inadmissible corroborative hearsay that improperly bolstered the testimony of the complaining witness in a criminal sexual conduct trial?

[Doc. 23-10 at 3.] On March 21, 2012, the South Carolina Supreme Court denied the petition for writ of certiorari. [Doc. 23-12.]

On April 5, 2012, Petitioner, through Hudgins, filed a petition for rehearing. [Doc. 23-13.] Petitioner argued that, in denying his petition for writ of certiorari, the court overlooked the fact that PCR counsel was ineffective in failing to raise Petitioner's substantial ineffective assistance of trial counsel claim. [*Id.* at 1, 3.] Petitioner contended the South Carolina Supreme Court had not had the opportunity to address the continued

validity of its decision in *Aice v. State*, 409 S.E.2d 392 (1991), which bars successive PCR applications based on ineffective assistance of PCR counsel, in light of the United States Supreme Court's recent decision in *Martinez v. Ryan*, 566 U.S. ---, 132 S. Ct. 1309 (2012). [*Id.* at 2–3.]  On May 14, 2012, the South Carolina Supreme Court denied the petition for rehearing and issued remittitur.  [Docs. 23-14, 23-15.]

### Second PCR Application

Petitioner, proceeding pro se, filed a second PCR application on March 22, 2010. [Doc. 23-16.]  Petitioner stated the following as his grounds for relief, quoted substantially verbatim: "(a) No rape was Committed; (b) No Kidnapping; (c) In[e]ffective Assistance of Counsel."  [*Id.* at 3.]  Petitioner also complained that "PCR Counsel failed to perfect Appeal that was not knowingly and intelligently waived before the PCR Court on the record  409 SE 2d 395 Austin vs. State."  [*Id.* at 5.]

On November 5, 2010, the PCR court entered a conditional order of dismissal, finding Petitioner's second PCR application was successive to the first application and moot because an appeal of the first application was pending before the South Carolina Supreme Court.  [Doc. 23-18.]  Petitioner was allowed twenty days to show why the conditional order should not become final.  [*Id.* at 4.]  Receiving no response from Petitioner, on April 21, 2011, the PCR court entered a final order of dismissal, denying and dismissing Petitioner's second PCR application as successive and moot.  [Doc. 23-19.]

**Petition for Writ of Habeas Corpus**

As stated, Petitioner filed this Petition for writ of habeas corpus on July 6, 2012

pursuant to 28 U.S.C. § 2254. [Doc. 1.] Petitioner asserts the following grounds for relief,

quoted substantially verbatim:

> **Ground One**:     Due Process Violation
>
> *Supporting Facts:*   PCR Counsel denied me the chance to properly exhaust my available state remedies to the fullest by not filing a 59 (E) motion and by filing an appeal which hindered me from filing a pro sé 59 (E) motion.
>
> **Ground Two**:     In[e]ffective Assistance of Counsel
>
> *Supporting Facts:*   Appella[te] Counsel denied me the chance to exhaust my issues that was reserved on PCR for the Supreme Court to review. There were eleven issues presented during my PCR hearing. I submitted some of these issues to appella[te] attorney Katherine Hudgins, Attorney Generals Office, Clerk of Court & Supreme Court of South Carolina in the form of "prosé brief to writ of certiorari."
>
> **Ground Three**:    Expert Witness Testimony
>
> *Supporting Facts*:   Defense was consent all the way. The expert testimony said the alleged victim was sexually assaulted.

[Doc. 1.]

As stated, Respondent filed a motion for summary judgment on October 15, 2012.

[Doc. 22.] On November 15, 2012, Petitioner filed a response in opposition to the motion.

[Doc. 29.] Accordingly, Respondent's motion is now ripe for review.

## APPLICABLE LAW

**Liberal Construction of Pro Se Petition**

Petitioner brought this action *pro se*, which requires the Court to liberally construe

his pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S.

519, 520 (1972) (per curiam); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978);

*Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less

stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. Even under

this less stringent standard, however, the pro se petition is still subject to summary

dismissal. *Id.* at 520–21. The mandated liberal construction means only that if the court

can reasonably read the pleadings to state a valid claim on which the petitioner could

prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court

may not construct the petitioner's legal arguments for him. *Small v. Endicott*, 998 F.2d

411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely

presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved

for summary judgment:

> The court shall grant summary judgment if the movant shows
> that there is no genuine dispute as to any material fact and the
> movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would

affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such

10

that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations

11

> (including those made for purposes of the motion only),
> admissions, interrogatory answers, or other materials;
> or
>
> (B) showing that the materials cited do not establish the
> absence or presence of a genuine dispute, or that an
> adverse party cannot produce admissible evidence to
> support the fact.

Fed. R. Civ. P. 56(c)(1).  Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

**Habeas Corpus**

### *Generally*

Because Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended.  *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir. 1998).  Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication

> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law,
> as determined by the Supreme Court of the United States;  or
>
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in
> the State court proceeding.

28 U.S.C. § 2254(d).  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  *Williams v. Taylor*, 529 U.S. 362, 410 (2000).  "A state court's

12

determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision," and "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011). Moreover, state court factual determinations are presumed to be correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### *Procedural Bar*

Federal law establishes this Court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254. This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. *Id.* The separate but related theories of exhaustion and procedural bypass operate to require a habeas petitioner to first submit his claims for relief to the state courts. A habeas corpus petition filed in this Court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

#### *Exhaustion*

Section 2254 contains the requirement of exhausting state court remedies and provides as follows:

> (b)     (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—

> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)     (i) there is an absence of available State corrective process; or
>
>           (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
> (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254. The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. *Id.* § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997). Thus, a federal court may consider only those issues that have been properly presented to the highest state court with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for PCR. State law requires that all grounds for relief be stated in the direct appeal or PCR application. S.C. App. Ct. R. 203; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221

S.E.2d 767, 770 (S.C. 1976). If the PCR court fails to address a claim as required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment. S.C. R. Civ. P. 59(e). Failure to do so will result in the application of a procedural bar to that claim by the South Carolina Supreme Court. *Marlar v. State*, 653 S.E.2d 266 (S.C. 2007).[5] Further, strict time deadlines govern direct appeal and the filing of a PCR application in the South Carolina courts. For direct appeal, a notice of appeal must be filed and served on all respondents within ten days after the sentence is imposed or after receiving written notice of entry of the order or judgment. S.C. App. Ct. R. 203(b)(2), (d)(1)(B). A PCR application must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45(A).

If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts. *Richardson v. Turner*, 716 F.2d 1059, 1062 (4th Cir. 1983); *Patterson v. Leeke*, 556 F.2d 1168 (4th Cir. 1977). Therefore, in a federal petition for habeas relief, a petitioner may present only those issues that were presented to the highest South Carolina court through direct appeal or through an appeal from the denial of a PCR application, regardless of whether the court actually reached the merits of the claim.[6]

---

[5]In *Bostick v. Stevenson*, 589 F.3d 160 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007 decision in *Marlar*, South Carolina courts had not uniformly and strictly enforced the failure to file a motion pursuant to Rule 59(e) as a procedural bar. 589 F.3d at 162–65. Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the Court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

[6]In *State v. McKennedy*, the South Carolina Supreme Court reiterated that a petition for discretionary review to the South Carolina Supreme Court in criminal and post-conviction cases is outside South Carolina's standard review process, and therefore, "petitions for rehearing and certiorari following an adverse Court of

15

*Procedural Bypass*

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner seeks habeas corpus relief based on an issue he failed to raise at the appropriate time in state court, removing any further means of bringing that issue before the state courts.  In such a situation, the petitioner has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition.  *See Smith v. Murray*, 477 U.S. 527, 533 (1986).  The United States Supreme Court has stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts.  *See id.*  Bypass can occur at any level of the state proceedings if a state has procedural rules that bar its courts from considering claims not raised in a timely fashion.  *Id.*

The Supreme Court of South Carolina will refuse to consider claims raised in a second appeal that could have been raised at an earlier time.  *See* S.C. Code Ann. § 17-27-90; *Aice v. State*, 409 S.E.2d 392, 394 (S.C. 1991).  Further, if a prisoner has failed to file a direct appeal or a PCR application and the deadlines for filing have passed, he is barred from proceeding in state court.  S.C. App. Ct. R. 203(d)(3) & 243.  If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar.  *See Reed v. Ross*, 468 U.S. 1, 11 (1984); *see also Kornahrens v. Evatt*, 66 F.3d 1350, 1357 (4th Cir. 1995).  As the United States Supreme Court explained:

---

Appeals' decision are not required in order to exhaust all available state remedies." 559 S.E.2d 850, 854 (S.C. 2002) (citing *In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases*, 471 S.E.2d 454 (S.C. 1990)).

> [State procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed*, 468 U.S. at 10–11.

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986). Further, if the petitioner does not raise cause and prejudice, the court need not consider the defaulted claim. *See Kornahrens*, 66 F.3d at 1363.

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991). Absent a showing of cause and actual prejudice, a federal court is barred from considering the claim. *Sykes*, 433 U.S. at 87. In such an instance, the exhaustion requirement is technically met, and the rules of procedural bar apply. *Teague v. Lane*, 489 U.S. 288, 297–98 (1989); *Matthews*, 105 F.3d at 915 (citing *Coleman*, 501 U.S. at 735 n.1; *Teague*, 489 U.S. at 297–98; *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996); *Bassette v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990)).

17

*Cause and Actual Prejudice*

Because the requirement of exhaustion is not jurisdictional, this Court may consider claims that have not been presented to the South Carolina Supreme Court in limited circumstances—where a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure or where a "fundamental miscarriage of justice" has occurred. *Coleman*, 501 U.S. at 750; *Carrier*, 477 U.S. at 495–96. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim, where the novelty of the constitutional claim is such that its legal basis is not reasonably available to the petitioner's counsel. *Id.* at 487–89; *Reed*, 468 U.S. at 16. Absent a showing of "cause," the court is not required to consider "actual prejudice." *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice to excuse a default. *Carrier*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error. *Engle v. Isaac*, 456 U.S. 107, 134–35 (1982).

As an alternative to demonstrating cause for failure to raise the claim, the petitioner must show a miscarriage of justice. To demonstrate a miscarriage of justice, the petitioner must show he is actually innocent. *See Carrier*, 477 U.S. at 496 (holding a fundamental miscarriage of justice occurs only in extraordinary cases, "where a constitutional violation has probably resulted in the conviction of someone who is actually innocent"). Actual innocence is defined as factual innocence, not legal innocence. *Bousley v. United States*,

523 U.S. 614, 623 (1998).  To pass through this actual innocence standard, the petitioner's case must be truly extraordinary.  *Carrier*, 477 U.S. at 496.

## DISCUSSION

**Grounds One and Two**

In Ground One, Petitioner raises a claim of ineffective assistance of PCR counsel,[7] and in Ground Two, Petitioner raises a claim of ineffective assistance of appellate PCR counsel.  [*See* Doc. 1 at 5, 6–7.]  However, "[t]he ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."  28 U.S.C. § 2254(i); *see also Martinez*, 132 S. Ct. at 1315, 1320 (stating that, "while § 2254(i) precludes [a petitioner] from relying on the ineffectiveness of his postconviction attorney as a 'ground for relief,' it does not stop [a petitioner] from using it to establish 'cause'" and holding that a petitioner may establish cause for defaulting an ineffective assistance of trial counsel claim by demonstrating his postconviction attorney was ineffective).  Therefore, Petitioner is not entitled to federal habeas relief as to Ground One or Two because neither ground is a cognizable federal habeas claim.

---

[7]Petitioner frames this claim as a due process violation, but he argues his PCR counsel provided ineffective assistance by not properly presenting Petitioner's claims.  [*See* Doc. 1 at 5.]  In his response in opposition to Respondent's motion for summary judgment, Petitioner states that he "offers no response to Ground One."  [Doc. 29 at 1.]  The Court is unsure whether the response indicates that Petitioner concedes that, as Respondent argues, Ground One is not cognizable; thus, the Court addresses Ground One.

**Ground Three**

### *Application of the Procedural Bar*

Procedural default is an affirmative defense that is waived if not raised by respondents. *Gray v. Netherland*, 518 U.S. 152,165–66 (1996). If the defense is raised, it is the petitioner's burden to raise cause and prejudice or actual innocence; if not raised by the petitioner, the court need not consider the defaulted claim. *Kornahrens v. Evatt*, 66 F.3d 1350 (4th Cir. 1995). Here, Respondent contends Ground Three, construed as either a direct or collateral claim, is procedurally defaulted and that Petitioner cannot show cause sufficient to excuse the default. [Doc. 23 at 12–15; *see also id.* at 15–19 (arguing that the underlying claim was without factual support and, therefore, was not a substantial claim of ineffective assistance of trial counsel sufficient to support a showing of cause for the default).] Petitioner states as his third ground for relief "Expert Witness Testimony" and asserts, "Defense was consent all the way. The expert testimony said the alleged victim was sexually assaulted." [Doc. 1 at 8.] Liberally construing the Petition, the Court concludes Ground Three raises an ineffective assistance of trial counsel claim with respect to the expert witness testimony, and for the reasons explained below, analyzes the merits of Ground Three.[8]

---

[8]The Court recognizes that Petitioner raised a claim in his pro se brief on direct appeal related to the scope of discovery concerning the expert witness. [Doc. 23-7 at 4 ("Did lower court err in not providing information that expert witness had in her possession during and before trial. This not only being evidence of error, but also the possibility of impeaching this witness was neglected."); *see also* Doc. 23-8 (paraphrasing claim raised in the pro se direct appeal brief as "the trial judge erred in denying [Petitioner's] trial counsel review of mental health provider Ms. Hamrick's records").] In his response in opposition to Respondent's motion, Petitioner appears to contend that Ground Three is the same expert witness claim he raised in his pro se brief on direct appeal. [*See* Doc. 29-1 at 24 ("Expert witness claim was initially presented to the S. Carolina Court of Appeals. This Court also being the last state court to address the claim to the way Petitioner raise[d] the claim." (citation omitted)), 25 ("Trial attorney failed to gain control of Peggy Webb Hamrick['s] notes before she took the stand[.] Trial judge knowing[ly] allowed prosecution to withhold notes[.] PCR Counsel & Appellate Counsel failed to raise issue properly.").] However, the Court notes that Ground Three

In his PCR application, Petitioner raised the following ineffective assistance claim as a ground for relief: "[T]rial attorney failed to request a Motion For A Mistrial rather than object to the trial Judge committing revers[i]ble error by allowing Peggy Webb Hamrick to testify Elizabeth Louise Bridgeman's post-traumatic stress disorder was caused by a criminal sexual assault by applicant."  [App. 370.]  The PCR court characterized this ineffective assistance claim as based on trial counsel's failure to object to expert witness testimony about the victim's post-traumatic stress disorder based on "things that only happened after the night of the alleged crime."  [App. 445.]  The PCR court concluded Petitioner offered no legal basis for his trial counsel to object to the expert testimony and that Petitioner failed to show that "a different approach to cross-examination would have been beneficial to the defense."  [App. 446.]

In his petition for writ of certiorari from the PCR court's decision, Petitioner raised the following claim:

---

focuses on the expert witness's testimony rather than the discoverable material the witness possessed, which was the focus of Petitioner's direct appeal claim.  Therefore, the Court concludes that, to the extent Petitioner has attempted to raise the same claim he raised on direct appeal, the claim is procedurally defaulted because the same claim was not presented to the South Carolina Court of Appeals and Petitioner cannot return to state court to properly present the claim.  *See Coleman*, 501 U.S. at 731–32; *Teague*, 489 U.S. at 297–98; *Matthews*, 105 F.3d at 915 (citations omitted).  Accordingly, Petitioner is not entitled to federal habeas relief on the basis of any direct claim asserted through Ground Three unless he has demonstrated cause for the default and actual prejudice resulting from the constitutional violation or that he is actually innocent.

Upon review, Petitioner has failed to establish cause for and actual prejudice resulting from the default or that he is actually innocent.  Petitioner has argued ineffective assistance of PCR and appellate PCR counsel as cause for the default of his claims.  [*See* Doc. 29-1 at 24–25.]  However, ineffective assistance of PCR counsel may establish cause for default of only an ineffective assistance of trial counsel claim—that is, ineffective assistance in any other collateral proceeding may not establish cause for default and ineffective assistance of PCR counsel may not establish cause for default of other types of claims, such as direct claims.  *See Martinez*, 132 S. Ct. at 1320.  Petitioner has failed to otherwise establish that some external factor prevented him from properly raising the direct claim, *see Carrier*, 477 U.S. at 488, and thus, the Court concludes that, to the extent he has raised a direct claim in Ground Three, Petitioner has failed to demonstrate cause for defaulting the direct claim.  Further, Petitioner has failed to argue he is actually innocent, and therefore, Petitioner cannot overcome the procedural default of Ground Three, and it is barred from federal habeas review.

> Did the PCR judge err in refusing to find counsel ineffective for failing to object to expert witness testimony that was outside the time and place limitations of Rule 801(d)(1) and constituted inadmissible corroborative hearsay that improperly bolstered the testimony of the complaining witness in a criminal sexual conduct trial?

[Doc. 23-10 at 3.]  Petitioner argued,

> "Under Rule 801(d)(1), SCRE, corroborative witness testimony is limited to time and place of the alleged assault. The corroborative testimony cannot include [']details or particulars['] regarding the assault. <u>Dawkins v. State</u>, 346 S.C. 151, 156, 551 S.E.2d 260, 262 (2001)." <u>Smith v. State</u>, 386 S.C. 562, 566, 689 S.E.2d 629, 632 (2010). The social worker's testimony in the present case went beyond the limitations of Rule 801(d)(1) and included details and particulars corroborating the complaining witness' testimony. Counsel was ineffective in failing to object to the inadmissible corroborative hearsay testimony.
>
> Petitioner was prejudiced by counsel's deficient performance. Petitioner asserted a consent defense and credibility of the witnesses was critical. The State's evidence as to lack of consent was not overwhelming. As the Court wrote in <u>Dawkins</u>, ["P]etitioner was prejudiced by counsel's deficient performance because improper corroboration testimony that is merely cumulative to the victim's testimony cannot be harmless . . . . '[I]t is precisely this cumulative effect which enhances the devastating impact of improper corroboration[.]'" <u>Dawkins</u>, 346 S.C. at 156-57, 551 S.E.2d at 263 (quoting <u>Jolly v. State</u>, 314 S.C. 17, 21, 443 S.E.2d 566, 569 (1994)).

[*Id.* at 7 (fourth alteration in original); *see also* Doc. 23-13 (arguing credibility was the ultimate issue and, therefore, the expert's testimony improperly bolstered the testimony of the complaining witness).]  The petition for writ of certiorari and the subsequent petition for rehearing indicated this claim differed from the claim considered by the PCR court.  [*See* Doc. 23-10 at 7 ("The allegation of ineffective assistance of counsel did not involve the nature and scope of cross examination, as stated in the order of dismissal, but rather the

22

failure to object to improper testimony."); Doc. 23-13 (arguing PCR counsel was ineffective for failing to raise the issue raised in the petition for writ of certiorari).]

Upon review, the Court is not convinced that the claim presented to and analyzed by the PCR court is sufficiently different from the claim raised in the petition for writ of certiorari to conclude that Ground Three is procedurally defaulted for Petitioner's failure to fairly present either claim to the South Carolina courts. *See Coleman*, 501 U.S. at 731–32; *Teague*, 489 U.S. at 297–98; *Matthews*, 105 F.3d at 915 (citations omitted); *see also Plyler v. State*, 424 S.E.2d 477, 478 (S.C. 1992) (holding that an issue that was neither raised at the PCR hearing nor ruled upon by the PCR court was procedurally barred from review on certiorari to the South Carolina Supreme Court (citing *Hyman v. State*, 299 S.E.2d 330 (S.C. 1983))).  For example, the PCR court recognized that Petitioner testified at the hearing on his PCR application that Hamrick's testimony (1) was based on only things that happened after the assault and (2) gave credence to the victim's story.  [App. 400, 445–46.]  Thus, the PCR court appears to have considered whether Hamrick's testimony was impermissible corroborative testimony—i.e., outside the time and place limitations of South Carolina Rule of Evidence 801(d)(1) and improper bolstering—to which Petitioner's trial counsel should have objected.  Accordingly, in an abundance of caution, the Court considers these ineffective assistance claims raised to the PCR court and the South Carolina Supreme Court to be sufficiently similar such that Ground Three is not procedurally barred from federal habeas review, and the Court considers the merits of Ground Three below.

### *Merits of Claim*

Under the AEDPA, a federal court may not grant habeas relief unless the underlying state court decision was contrary to or an unreasonable application of federal law, as determined by the United States Supreme Court, 28 U.S.C. § 2254(d)(1), or based on an unreasonable determination of the facts before the court, *id.* § 2254(d)(2).  The Supreme Court has held the "contrary to" and "unreasonable application of" clauses present two different avenues for relief.  *Williams*, 529 U.S. at 405 ("The Court of Appeals for the Fourth Circuit properly accorded both the 'contrary to' and 'unreasonable application' clauses independent meaning.").  The Court stated there are two instances when a state court decision will be contrary to Supreme Court precedent:

> A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . . A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent.

*Id.* at 405–06.  On the other hand, a state court decision is an unreasonable application of Supreme Court precedent when the decision "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case."  *Id.* at 407–08; *see also Richter*, 131 S. Ct. at 786 ("Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court. . . . It bears repeating that even a strong case for relief does not mean the state

court's contrary conclusion was unreasonable."). Finally, a decision cannot be contrary to or an unreasonable application of Supreme Court precedent unless applicable Supreme Court precedent exists; without applicable Supreme Court precedent, there is no habeas relief for petitioners. *Virsnieks v. Smith*, 521 F.3d 707, 716 (7th Cir. 2008) (citing *Lockhart v. Chandler*, 446 F.3d 721, 724 (7th Cir.2006); *Simpson v. Battaglia*, 458 F.3d 585, 597 (7th Cir.2006)); *see Bustos v. White*, 521 F.3d 321, 325 (4th Cir. 2008).

When evaluating a habeas petition based on a claim of ineffective assistance of counsel, assuming the state court applied the correct legal standard—the Supreme Court's holdings in *Strickland v. Washington*, 466 U.S. 668 (1984)—"[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard."[9] *Richter*, 131 S. Ct. at 785. "A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.*; *see also Yarborough v. Gentry*, 540 U.S. 1, 6 (2003) (stating judicial review of counsel's performance is "doubly deferential when it is conducted through the lens of federal habeas"). Even if a state court decision questionably constitutes an unreasonable application of federal law, the "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the

---

[9]In *Strickland*, the Supreme Court established that to challenge a conviction based on ineffective assistance of counsel, a prisoner must prove two elements: (1) his counsel was deficient in his representation and (2) he was prejudiced as a result. 466 U.S. at 687. To satisfy the first prong, a prisoner must show that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. To satisfy the second prong, a prisoner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 692. The Supreme Court has cautioned that "[j]udicial scrutiny of counsel's performance must be highly deferential," and "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

correctness of the state court's decision." *Richter*, 131 S. Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  Thus, in such situations, the habeas court must determine whether it is possible for fairminded jurists to disagree that the arguments or theories supporting the state court's decision are inconsistent with Supreme Court precedent.  *Id.*

Here, the PCR court held an evidentiary hearing and outlined a factual basis for declining to find trial counsel's representation fell below the *Strickland* and applicable state law standards.  [App. 381–438 (evidentiary hearing), App. 440–52 (PCR court's findings of fact, conclusions of law, and analysis).]  The PCR court made the following findings as to Ground Three:

> Applicant testified that he felt Counsel should have objected to testimony from a State's expert witness, Peggy Hamrick.  Applicant testified that Counsel should have objected [to] the testimony about the victim's post-traumatic stress disorder because Ms. Hamrick testified at trial to things that only happened after the night of the alleged crime. Applicant also testified that Counsel questioned Ms. Hamrick, but his questions focused on what she was gaining by testifying.  Applicant stated that he felt prejudiced because Ms. Hamrick's testimony gave credence to the victim's story.
>
> Counsel testified that he did not challenge Ms. Hamrick's qualifications, but did challenge the substance of her testimony.
>
> This Court finds Counsel's testimony to be more credible tha[n] Applicant's on this issue.  Applicant offered no legal basis for Counsel to object to the expert testimony. The record reflects that Counsel cross-examined Ms. Hamrick after her testimony for the State.  The nature and scope of cross-examination is inherently a matter of trial tactics. United States v. Nersesian, 824 F.2d 1294, 1321 (2nd Cir. 1987).  "[A] defendant has a 'burden of supplying sufficiently precise information,' of the evidence that would have been obtained had his counsel undertaken the desired investigation, and of showing 'whether such information . . . would have produced a different result.'" United States v. Rodriguez, 53 F.3d 1439,

1449 (7th Cir. 1995). The Applicant did not proffer any questions counsel allegedly failed to ask, and did not present any testimony showing the witness['s] answers at trial would have been different. Accordingly, the Applicant has not shown that a different approach to cross-examination would have been beneficial to the defense. This Court finds that the Applicant has failed to meet his burden of proof as to this claim.

[App. 445–46.] Accordingly, the PCR court considered Petitioner's argument that his trial counsel should have objected to Hamrick's testimony but found Petitioner had failed to state a claim pursuant to *Strickland* because he failed to identify a legal basis for an objection and trial counsel made a tactical decision to cross-examine Hamrick instead of object to her testimony.[10] Ultimately, the PCR court concluded Petitioner had failed to prove either prong of *Strickland*. [App. 451–52.]

Upon review, the Court determines the PCR court's denial of Petitioner's ineffective assistance claim was neither contrary to nor an unreasonable application of applicable Supreme Court precedent. First, the PCR court applied the *Strickland* standard, which is the applicable Supreme Court precedent. Second, the record fails to demonstrate the PCR court confronted a set of facts that were materially indistinguishable from those considered in a decision of the Supreme Court but arrived at a result different from the Supreme Court precedent. Thus, the Court concludes the PCR court's decision was not contrary to applicable Supreme Court precedent.

Further, the record supports the PCR court's decision, which demonstrates the PCR court's decision was not an unreasonable application of *Strickland*. The record reflects that

---

[10]It is unclear which portion of Hamrick's testimony Petitioner argued was objectionable [*see, e.g.*, App. 400], and the record reveals that trial counsel did object to Hamrick's testimony explaining her conclusion that the victim's reaction was consistent with someone who had been sexually assaulted [App. 262].

Johnston, Petitioner's trial counsel, did object to testimony by Hamrick explaining her conclusion that the victim's reaction was consistent with someone who had been sexually assaulted. [App. 262.]  The trial court sustained the objection, and the State did not ask any further questions of Hamrick. [*Id.*]  On cross-examination, Johnston brought out that Hamrick was being paid by the State, had seen a number of people in her practice that she felt were fabricating their reports, had received a referral for the victim almost a year after the crime, and that Hamrick performed treatment and therapy—and not forensic counseling, which is a process to form an investigatory conclusion—for the victim.  [App. 262–66.]  Although he argued to the PCR court that Johnston should have challenged whether Hamrick could testify in the case, Petitioner failed to argue that the result of the proceeding would have been different if Hamrick had not been allowed to testify or if her testimony had been limited through objections by Johnston; Petitioner merely argued that Hamrick's testimony "helped" convict him.  [*See* App. 399–400; *see also* App. 365–70 (stating claims raised to PCR court), 446 ("Applicant has not shown that a different approach to cross-examination would have been beneficial to the defense.").]  Further, Petitioner did not argue to the South Carolina Supreme Court that the result of the trial would have been different if Johnston had objected to Hamrick's testimony as impermissible hearsay.  Rather, Petitioner merely contended that the "credibility of the witnesses was critical" and that "[t]he State's evidence as to lack of consent was not overwhelming."  [Doc. 23-10 at 7.]  However, in addition to the victim's and Hamrick's testimony, the State also presented testimony from Petitioner's co-defendant that largely echoed the victim's testimony [App. 206–212], as well as testimony from the nurse who examined the victim, using a sexual assault protocol, in the emergency room after the

28

sexual assault [App. 142–62] and the family practitioner who provided follow-up testing for sexually transmitted diseases and prescribed medication for the victim's symptoms of anxiety and depression [App. 240–48].  Thus, the record supports the PCR court's determination that Petitioner failed to demonstrate either prong of the *Strickland* standard. Therefore, the Court concludes the PCR court's decision was not contrary to or an unreasonable application of applicable Supreme Court precedent, and Petitioner is not entitled to habeas corpus relief based on Ground Three.

## CONCLUSION

Wherefore, based upon the foregoing, the Court recommends Respondent's motion for summary judgment be GRANTED and the Petition be DENIED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

March 26, 2013
Greenville, South Carolina

29